IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| TWISTER COMMUNICATIONS | § | CASE NO: 00-34799 |
| NETWORK INC | § | |
| Debtor(s) | § | |
| | § | |
| | § | CHAPTER 7 |

## ORDER TO DOCKET LETTER

The Court has received an undated letter from a person representing himself to be President of P.P.P. Communications, Ltd., an alleged creditor in this case. A copy of the letter is attached to this order.

The Court is not allowed to have direct communications with parties to a bankruptcy case.

The Court is directing the Clerk to docket this order, with the letter attached. The Clerk will automatically serve a copy of the order, with the letter attached, on the chapter 7 trustee and on the United States Trustee. The Clerk is directed to serve a copy on Mr. White.

Mr. White, and P.P.P. Communications Ltd. are advised that the law prohibits direct communications with the judge. The appropriate way to raise an issue in a bankruptcy case is to file a motion or an adversary proceeding. That allows appropriate responses by other parties and allows for all matters to be decided in open court, on the record. Direct communications bypass these safeguards and the orderly process of adjudicating disputes.

Mr. White and P.P.P. Communications may contact the US Trustee's office and should obtain counsel and file proper pleadings.

SIGNED 04/09/2007.

WESLEY W STEEN
United States Bankruptcy Judge

Dear Mr. Steen,

I am writing you in to Case number 00-34799, Twister Communications Network, Inc., a case you are well versed in over the past four or five years. There are several issues that need to be addressed here. Being 1,000 miles away from this case has worked to my detriment and I feel that we have been taken advantage of because of this factor.

First, some background. My company, PPP Communications, Ltd., was purchasing prepaid calling cards from Twister in significant quantities when MCI closed them down. At the time, our monthly sales were in the neighborhood of $250k per month. After this fiasco, our sales dropped to around $50k per month as most of our customers blamed us for the cards not working. Since most of our customers were retail locations, it caused ill will between them and their customers so they in turn blamed us. However, it should be pointed out that rather than leaving these customers in the lurch with losses of their own, we did what we felt was the right thing and replaced as many of the cards as we could. This caused us tremendous financial hardship and cost us in excess of $228k in out of pocket money. A large portion of which we had to borrow and pay interest on. We filed our original claim for this amount as soon as we found out, quite by accident, that we were able to possibly get some sort of reimbursement for our immediate losses.

For several months, I contact Mr. Joseph Hill regarding this case trying to keep informed as to any updates. Then, as it became more apparent some funds were going to be paid and become available to the rightful parties who suffered damages, Mr. Hill and Mr. Wentworth from the same firm, informed me after all this time, that we did not have a timely filed claim and that we would be unlikely to receive any funds despite our tremendous losses and emotional suffering that we had incurred. If I wanted to be listed among the timely filed it would take a great deal of time etc etc. It upset me tremendously because I could certainly have resolved this issue in he previous several months if I had been aware of it. After much discussion via email and over the telephone, they informed me one day that if I were to submit and "offer" less than my original claim in the next thirty minutes, they would see about including us with the timely filers and inferred that it would speed up my receiving any money. They faxed me a form to complete, which I did, revising my claim down to $175k. Amazingly, I had hardly walked away from the fax machine when it rang back with an approval of my new claim and a statement stating that I was now a "timely" filer. This amazed me since they had told me how long it would take for me to accomplish this on my own, hire a lawyer etc etc.

We did receive the amount of our revised claim which was indeed appreciated but it hardly covered the loss of our business and in fact didn't even cover the actual amount we had spent trying to bounce back from this event. The icing on the cake though was

recently when I received a notice stating that we were not eligible to receive any of the money that had gone unclaimed because our signature was not notarized. No one had told us it need to be. In addition, I had asked Mr. Hill several times what would happen if there was any money leftover after all claims were paid. I was told that what we had filed for was all we would get no matter what. Now this. Here is more money, I don't have any idea how much, available and we have got to be among the most deserving of all those who filed claims because of the damage caused to us. Most creditors didn't feel this event nearly to the extent we did as it ruined us. Others, like radio stations etc just moved on because it was a very small portion of their actual business.

In closing, I appreciate you time in reading this and would appreciate any information you can provide me in correcting this oversight. If I were closer geographically, I would not hesitate to get in the car, come down there and deal with it face to face. If this is necessary and there is some assurance that we will receive what is rightfully ours, I would be happy to do just that at your direction. Once again, thank you in advance for your time and consideration. Please let me know what options are available to us to resolve this matter once and for all in an equitable manner.

Respectfully submitted,

Donald J. White, President
P.P.P. Communications, Ltd.
1911 300th Street
Washington, IA  52353
319-461-4525  phone
319-653-6829  fax